IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JERRY M. EMERY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-3136-CV-S-ODS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

### ORDER AND OPINION AFFIRMING FINAL DECISION OF COMMISSIONER OF SOCIAL SECURITY

Pending is an appeal of the Commissioner's final decision denying Plaintiff's separate applications for disability and supplemental security income benefits. After reviewing the record, the Commissioner's decision is affirmed.

### I. BACKGROUND

Plaintiff was born in April 1955, has completed high school, and has prior work experience as a roofer, construction worker, truss assembler, roughneck, torch cutter, and packer. In January 2002, Plaintiff injured his neck and right shoulder while working. His personal physician recommended neck exercises and prescribed a painkiller and an anti-inflammatory. R. at 157. An MRI was performed in late February and revealed mild spondylosis at C3-4, C4-5 and C6-7. At C5-6, the MRI revealed spondylosis and disk protrusion, with mild impingement of the spinal cord and compression of the disk. at 159-60. Treatment with painkillers and anti-inflammatories continued. R. at 156.

On March 19, 2002, Plaintiff's doctor (Dr. Monte Maska) noted Plaintiff experienced pain when he moved his neck, as well as pain in his shoulder. He referred Plaintiff to a neurosurgeon. R. at 153. Plaintiff first saw the neurosurgeon (Dr. Mark Crabtree) in late June 2002. Dr. Crabtree recommended a myelogram, R. at 181-83, which revealed an "osteoporotic disk complex at C5-6 compromising the C6 nerve root."

R. at 179.  In mid-August, a diskectomy was performed and a steel plate inserted in his neck.  R. at 148-50.  On September 11, 2002, Dr. Crabtree wrote that Plaintiff "has done well since his surgery.  He is free of pain and will be returning to his usual activities.  I have recommended that the patient consider work conditioning training over the course of the next four weeks."  R. at 177.  On October 15, Dr. Crabtree wrote that Plaintiff continued to do well, was free of pain, and had completed four work training sessions.  He recommended these sessions continue for another four weeks, at which time Dr. Crabtree would evaluate his ability to return to work.  R. at 175.  On November 20, Plaintiff reported "difficulties with stiffness and soreness in his neck," and Dr. Crabtree encouraged him to begin strength training.  R. at 171.  On December 18, Dr. Crabtree released Plaintiff to return to work without restrictions.  R. at 168.  A scheduled examination in January 2003 revealed no difficulties or complaints, R. at 167, and reports from physical therapy showed Plaintiff's strength in his right arm to be 4/5.  All other motor functions and strength were rated at 5/5.  R. at 169-70, 172-73.  On August 20, 2003 – one year following Plaintiff's surgery and two months after Plaintiff applied for disability benefits – Dr. Crabtree wrote Plaintiff "has done well since his surgery.  He is free of upper extremity pain.  He does have some complaints of decreased range of motion with turning his neck from side to side.  He expresses satisfaction at the outcome of the surgery as a whole."  R. at 164.  Although another appointment was scheduled for six months, this is the last record of a visit to Dr. Crabtree.

In January 2004, Plaintiff's counsel arranged for Dr. David Volarich to conduct an independent medical examination.  During the exam Plaintiff complained of neck and shoulder pain and diminished range of motion, and reported he could not mow the lawn, hunt, carry groceries, work overhead, or drive for more than two or three hours.  R. at 188.  Right bicep strength tested at 4/5, and all other aspects of strength in the upper extremities tested at 5/5.  R. at 190.  Dr. Volarich opined Plaintiff had 40% permanent partial disability to the body as a whole but intimated he could still work (although not at his former job).  R. at 192-93.  Dr. Volarich indicated Plaintiff could not engage in repetitive bending, twisting, pushing, pulling, lift weights over his head or carry weight

2

for a long distance and could lift no more than twenty-five pounds occasionally. He further opined Plaintiff needed to alternate between sitting and standing every 45-60 minutes and that Plaintiff should engage in activity such as walking, biking, or swimming. R. at 193.

The hearing was held on November 4, 2004. He testified that he lives with and takes care of his mother, who has a mild case of Alzheimer's. R. at 212. He reported seeing Dr. Maska just once since his last visit to Dr. Crabtree. R. at 224. Plaintiff continues to experience pain and uses a heating pad frequently. He also occasionally has numbness in his hand, causing him to drop things. R. at 227, 230-31. When he exerts himself (e.g., mowing the lawn or doing the laundry), he requires a lot of breaks. He also has difficulty sleeping. R. at 221-22, 235. He estimated that he could sit for thirty minutes at a time, stand for twenty minutes at a time, walk for 30 minutes at a time, and lift five to ten pounds. R. at 235-36. He lies down four to five times a day for thirty to sixty minutes at a time. R. at 236.

The ALJ elicited testimony from a Vocational Expert ("VE"). The VE described Plaintiff's prior work as ranging from medium to very heavy and he had developed transferable skills, principally reading blueprints, using tools, and knowledge of the building industry. R. at 240-41. The VE was asked to assume a person of Plaintiff's age, education and work experience who experienced a dull aching neck pain that occasionally became sharper, dropped items held in his dominant hand four to five times a day, suffered numbness and weakness in his dominant hand, and who could sit or walk for thirty minutes, stand for twenty minutes, and must recline four to five times a day for thirty to sixty minutes at a time. The VE opined that such an individual could not find work in the national economy. R. at 242-43. When asked to assume only the limitations contained in Dr. Villerich's report, the VE indicated that such a person would not be precluded from all work. R. at 244. When asked to assume a person of the Plaintiff's background who could lift twenty to twenty-five pounds occasionally and could remain in a fixed position for no more than forty-five to sixty minutes, the VE testified such a person could work as an office helper or cashier – although those positions required frequent reaching and handling. R. at 246-48.

3

The ALJ discounted Plaintiff's credibility based on conflicts between Plaintiff's testimony and information he provided to his doctors, opinions offered by his doctors, the results of medical tests, and other inconsistencies in the record. He concluded Plaintiff retains the ability to lift twenty-five pounds occasionally, must change positions frequently (every forty-five to sixty minutes), and must avoid repetitive bending, twisting, lifting, pushing, pulling, carrying, climbing. Plaintiff also must not carry weight over long distances or above his head. R. at 20. Based on the VE's testimony, the ALJ concluded Plaintiff could not return to his past work but retained the functional capacity to perform other work.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain he experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the
> disability results from a medically determinable physical or

4

> mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> > 1. The claimant's daily activities;
> > 2. the duration, frequency and intensity of the pain
> > 3. precipitating and aggravating factors;
> > 4. dosage, effectiveness and side effects of medication;
> > 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

The Court accepts Plaintiff's argument that his subjective complaints cannot be discounted or ignored simply because they are not fully corroborated by objective medical evidence. However, this does not mean the lack of medical evidence is unimportant. The record provides several grounds supporting the ALJ's decision to discount Plaintiff's subjective complaints. First, every doctor to examine Plaintiff indicates he can return to work. Second, Plaintiff did not report any of his subjective complaints to any of his doctors, nor had he sought treatment. In fact, in March 1992, Plaintiff specifically denied to Dr. Maska that he was experiencing weakness or numbness in his arm or hand, R. at 153; additionally, as noted earlier, two months after

5

filing for benefits he told Dr. Crabtree he was not experiencing pain. Third, testing contradicts Plaintiff's claims of significant strength loss.

### III. CONCLUSION

The record demonstrates Plaintiff cannot return to his prior work. However, the ALJ's factual findings are supported by substantial evidence in the record as whole, as is the ALJ's conclusion Plaintiff retains the functional ability to perform other work in the national economy. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

DATE: January 12, 2006

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT